UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGIA CARPET SALES, INC., d/b/a GEORGIA CARPETS, ) ) ) | |
| Plaintiff, ) ) | 04 C 2653 |
| ) | |
| NOURISON RUG CORPORATION, ) a New York corporation, ) ) | Judge John W. Darrah |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Georgia Carpet Sales, Inc., filed suit against Defendant, Nourison Rug Corporation, alleging violation of Section 1 of the Sherman Antitrust Act, violation of the Illinois Antitrust Act, and breach of contract. Following the close of discovery, Defendant moved for summary judgment. Defendant's Motion for Summary Judgment was denied as untimely. Defendant now moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

A reading of the Complaint and of the materials submitted by the parties supports the following summary of facts.

Georgia Carpets' principal place of business is in Westmont, Illinois. Georgia Carpets primarily resells carpets and rugs to consumers in Illinois. Nourison's principal place of business is in Saddlebrook, New Jersey. Nourison is engaged in the manufacturing and selling of area rugs within the United States.

In the Fall of 2001, a representative of Nourison solicited Georgia Carpets to purchase and resell Nourison's line of area rugs. Georgia Carpets purchased a number of rugs and began to market the rugs for resale to consumers. In December 2003, Nourison's sales representative,

Brenda Schmid, visited Georgia Carpets' showroom for the purpose of showing area rugs to Howard Lieberman. While at the showroom, Schmid noticed the prices on the area rugs that Georgia Carpet had purchased from Nourison. Schmid told Lieberman that Georgia Carpets' prices were too low.

In February 2004, Georgia Carpets placed orders for area rugs that Nourison had in stock on behalf of consumers who paid deposits for their order. After the area rugs did not arrive within the usual shipping time frame, Lieberman called Nourison's order desk regarding an order. The order desk first told Lieberman that the order had not shipped and that it would ship any day. Later that month, Lieberman contacted the order desk again to find out why the order had still not shipped. The order desk told Lieberman that the order had not shipped but would not tell him why it had not shipped. Lieberman checked with Nourison's credit department, which informed Lieberman that Georgia Carpets' credit was excellent. Later that day, Nourison's Vice President of National Sales telephoned Lieberman and told him that Nourison's owner knew all about the matter and that Nourison did not have to explain why the order never shipped.

The next day, Nourison's Vice President of Finance telephoned Lieberman and asked whether Georgia Carpets wanted to return its inventory. Lieberman inquired about orders that had not shipped. Nourison offered a false pretext as to why the orders had not been filled. The following day, Lieberman again spoke with the Vice President of Finance about a certain order. He informed Lieberman that Nourison had first "held up" and then cancelled the order. Later that day, Nourison's Chief Financial Officer telephoned Lieberman and asked whether Georgia Carpets wanted to continue to do business but would not commit to filling orders so that Georgia Carpets could resell them for the prices to which it had committed to its customers. Because Nourison refused to ship

2

the rugs, Georgia Carpets refunded the deposits to its customers and lost the sales for those rugs.

Georgia Carpets alleges that Nourison and other co-conspirators engaged in price fixing to maintain inflated resale prices and insure that the co-conspirators would maintain their customers and be able to charge inflated prices. Nourison's and the co-conspirators' conduct included: (1) discussing prices being charged for area rugs resold to customers; (2) agreeing to raise, fix, and maintain prices for area rugs resold to consumers; (3) raising, fixing, and maintaining prices for area rugs sold to consumers; (4) discussing and agreeing on restraining dealers who resold area rugs for lowers prices; and (5) monitoring, coercing, and enforcing adherence to higher prices for area rugs.

When the jurisdiction of the court is contested, "the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979), citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). In making its determination whether subject matter jurisdiction exists, the court may look beyond the jurisdictional allegations in the complaint and view whatever evidence has been submitted on the issue. *Capital Leasing Co. v. FDIC*, 999 F.2d 199, 191 (7th Cir. 1993). The court may weigh the evidence in order to satisfy itself that subject matter jurisdiction exists. Therefore, disputes over material questions of fact do not preclude the court from deciding jurisdictional issues. *Lumpkin v. United States*, 791 F. Supp. 747, 749 (N.D. Ill. 1992).

Jurisdiction exists in an antitrust suit if the defendant's conduct affects interstate commerce of that business. *See Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Assoc.*, 484 F.2d 751, 759-60 (7th Cir. 1974); *Gateway Assoc., Inc. v. Essex-Costello, Inc.*, 380 F. supp. 1089, 1092-93 (N.D. Ill. 1974).

No more than a non-frivolous claim under federal law is necessary for subject matter jurisdiction. *See Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003). "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946). Dismissal for lack of subject matter jurisdiction because of inadequacy of the federal claim is only proper when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy." *Oneida Indian Nation of NY v. County of Oneida*, 414 U.S. 661, 666 (1974) (*Oneida*).

Nourison argues that Georgia Carpets has failed to demonstrate subject matter jurisdiction for its antitrust claims because it has not identified any of the co-conspirators, and it has no evidence that Nourison has market power to demonstrate a price-fixing claim absent direct evidence of such price fixing.

Nourison's arguments improperly go to the merits of Georgia Carpets' claims. The allegations and materials provided demonstrate that Nourison's conduct affects interstate commerce of the retail carpet and rug business. Furthermore, based on the allegations and materials provided, it cannot be said that Georgia Carpets' antitrust claims are so insubstantial, implausible, or otherwise completely devoid of merit as to not involve a federal controversy to defeat subject matter jurisdiction. *See Oneida*, 414 U.S. at 666.

Furthermore, based on the above, Nourison's argument that the Court lacks jurisdiction over the state law claim of breach of contract because of the lack of a federal antitrust claim and diversity jurisdiction is moot.

For the foregoing reasons, Nourison's Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied.

Dated: August 3, 2005

JOHN W. DARRAH
United States District Judge